JOHN W. HUBER, United States Attorney (#7226)
CAMERON P. WARNER, Assistant United States Attorney (#14364)
Attorneys for the United States of America
111 South Main, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.  2:07-cr-00111 |
| Plaintiff, | : | **UNITED STATES' OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE AND REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)** |
| v. | : | |
| MARTIN VANDEMERWE, | : | |
| Defendant. | : | Judge Howard C. Nielson, Jr. |

Defendant, Martin Vandemerwe (Defendant), by and through his counsel of record, filed

a supplement to Defendant's pro se motion for compassionate release on January 22, 2021,

asking this Court to reduce his sentence of imprisonment from a United States Bureau of Prison

(BOP) facility to one of time served. As further explained herein, the United States respectfully

opposes Defendant's present motion because it is moot; accordingly, this Court should deny it.

**Factual Background**

On October 28, 2008, Defendant was found guilty by jury verdict of one count of

*Possession with Intent to Distribute Methamphetamine,* in violation of 21 U.S.C. § 841(a)(1).

(PSR (sealed) at 1). The court sentenced him to be imprisoned in BOP custody for a total term of

20 years, to be followed by a term of supervised release of 5 years with numerous conditions

attached. (ECF #138). With a total offense level of 32 and criminal history category of III,

Defendant's guideline imprisonment range was 151 to 188 months. (PSR (sealed) at 12). As of

January 8, 2021, Defendant had served a total of 12 years, 2 months, and 22 days of his prison

term, which represents 61.1% of his full term and 71.7% of his statutory term. (ECF# 168 at 3).

As a result of two prior felony drug convictions, Defendant was facing a mandatory minimum

sentence of life in prison pursuant to 21 U.S.C. § 851. (PSR (sealed) at 12). However, at his

sentencing hearing, the United States moved to dismiss one of Defendant's prior § 851 drug

felonies, which would have the effect of reducing his mandatory minimum prison term to 20

years. (ECF# 147 at 12-13). The court would later grant that motion. (ECF# 148 at 6-7).

Defendant first petitioned his warden for a compassionate release reduction of sentence

under 18 U.S.C. § 3582(c)(1)(A)(i) (hereinafter referred to as a reduction in sentence or "RIS" to

keep the vernacular consistent) on April 6, 2020. (ECF #168 at 4). His petition for a RIS was

denied by the warden on April 29, 2020. (ECF #168 at 4). Defendant filed his pro se motion

before this Court on December 23, 2020, (ECF #165) and counsel for Defendant filed a

supplement to Defendant's motion on January 22, 2021 (hereinafter collectively referred to as

"Defendant's motion" or "his motion"). (ECF #167). In his motion, Defendant states that "his

request for a sentence reduction is supported by extraordinary and compelling circumstances," in

part "due to his mental health," and "[m]ore significantly, his circumstances also warrant a

reduction because his sentence is no longer justified or justifiable under present law." (ECF #167

at 9).

Defendant's projected statutory release date is November 2, 2025. (ECF# 168 at 3).

However, Defendant was released to home confinement by BOP on February 17, 2021,

consistent with the CARES Act. (ECF#167-1); *see* Corona-virus Aid, Relief, and Economic

Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020) ("CARES Act").

Unless Congress intervenes, Defendant and many other inmates released to home confinement

under the CARES Act authority may likely have to return to their BOP facilities once the

pandemic emergency ends.[1]

Defendant has a criminal history that includes misdemeanor convictions for attempted

illegal possession/use of a controlled substance, illegal possession/use of a controlled substance,

and carrying a concealed dangerous weapon, and theft. (PSR (sealed) at 6-7). He also has prior

felony convictions for illegal possession of a controlled substance (twice), and possession with

intent to distribute. (PSR (sealed) at 7-8). While incarcerated for the underlying offense,

Defendant has not had any disciplinary violations. (ECF# 168 at 5). Defendant has participated

in numerous vocational and educational programs. (ECF# 168 at 5). He has also maintained

employment while incarcerated. (ECF# 168 at 5). Defendant is also qualified and on the waiting

list for the Residential Drug and Alcohol Program (RDAP). (ECF# 168 at 5).

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a

defendant's motion to reduce his or her term of imprisonment. Before filing that motion,

however, the defendant must first request that BOP file such a motion on his or her behalf.

§ 3582(c)(1)(A). A court may grant the defendant's own motion for a compassionate

release/reduction in sentence only if the motion was filed "after the defendant has fully

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

---

[1] *See* https://www.justice.gov/sites/default/files/opinions/attachments/2021/01/17/2021-01-15-home-confine.pdf

on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). The policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[2]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer,

---

[2] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the United States contends that the policy statement applies to motions filed by defendants as well.

amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG

§ 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and

characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's

age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the

possibility that BOP could identify other grounds that amount to "extraordinary and compelling

reasons." USSG § 1B1.13, cmt. n.1(D).

## Summary of the United States' Argument

This Court should deny Defendant's motion for a RIS because his release to home

confinement has rendered his present motion moot.

## Argument

### A. Defendant's Motion is Moot

In his motion, Defendants acknowledges that "[w]hile not *legally* moot, it was understood

that an order granting home confinement made the effort [to obtain a reduction in sentence]

*practically* moot, as release usually nullified the reasons that undergirded the request for a

reduction in sentence." (ECF# 167 at 5). But, as Defendant explains, "that understanding was

also based on belief that once home confinement was granted under the temporary authority of

the CARES Act, it wouldn't later be retracted." (ECF# 167 at 5). He then cites to the January 15

opinion from the Department of Justice's Office of Legal Counsel, revealing that the CARES Act authorizes the Director of BOP to place prisoners in home confinement only during the statute's covered emergency period during the COVID-19 pandemic. Once the emergency period ends, or once the Attorney General revokes the finding that emergency conditions are materially affecting BOP's functioning, BOP would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement.[3] Present counsel for the United States confirmed via email correspondence with a BOP senior attorney that this guidance from the DOJ Office of Legal Counsel is correct and there have been no updates to it. (Exh. 1). But he also stated that he has "no indication on when or if the AG plans to make such a determination," referencing the Attorney General's ability to revoke his finding. (Exh. 1).

The United States agrees that Defendant's motion for a RIS would not be moot in the event he were to be recalled to a BOP correctional facility. However, where that has yet to happen, and is unlikely to happen for the foreseeable future given the current status of COVID-19 across the nation, Defendant's present motion is clearly moot *at this time* because he is no longer incarcerated in a BOP facility. This position is supported by the applicable Sentencing Commission's policy statement for § 3582(c)(1)(A) which directs that a qualifying medical condition justifying a sentence reduction must "substantially diminishe[] the ability of the defendant to provide self-care *within the environment of a correctional facility* and from which

---

[3] *See* https://www.justice.gov/sites/default/files/opinions/attachments/2021/01/17/2021-01-15-home-confine.pdf

he or she is not expected to recover." USSG § 1B1.13, cmt. n.1(A)(ii) (emphasis added).[4] Here,

Defendant is not currently within the environment of a correctional facility. And the other

subsections of the policy's application note relate to a defendant's age and family circumstances

that would also justify the defendant's early release from incarceration. Again, Defendant is not

currently incarcerated.

Furthermore, § 3582 does not place a limit on the number of motions for compassionate

release that an inmate may file.[5] Defendant can file a new motion *if and when* he is recalled to a

BOP facility. Yet, it is quite possible that may never happen, despite the aforementioned January

15 opinion from the Department of Justice's Office of Legal Counsel. Congress could pass

additional legislation addressing this issue, particularly where recall of inmates could present a

significant expenditure of resources. Indeed, BOP currently has 7,638 inmates on home

confinement. https://www.bop.gov/coronavirus/. But even if Congress does not intervene and

Defendant is eventually returned to a BOP facility, the fact remains that he is *currently* released

---

[4] The United States recognizes that Circuit courts in other jurisdictions have determined that USSG § 1B1.13 does not apply to compassionate release motions filed by defendants. However, the 10th Circuit has yet to address the issue. Accordingly, in light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the United States contends that the policy statement applies to motions filed by defendants as well. *See* footnote 2 above.

[5] Despite there being no limit, in appropriate cases, the United States may ask the court to summarily deny repetitive and meritless motions.

to home confinement for the foreseeable future. His motion is therefore moot, and in the interest

of judicial economy the United States requests that this Court deny it as such.[6]


### Conclusion

This Court should deny Defendant's motion for a RIS because it is moot.



Respectfully submitted this 22nd day of February, 2020.

JOHN W. HUBER
United States Attorney

*/s/ Cameron P. Warner*
CAMERON P. WARNER
Assistant United States Attorney

---

[6] *See United States v. Gonzalez,* 2020 WL 6381982, at *3 (S.D. Cal. Oct. 30, 2020) (finding that the defendant's "recent transfer to home confinement by the BOP to be dispositive" because the defendant's "motion is predicated on the risk that the conditions of confinement in BOP facilities pose to individuals with risk factors to COVID-19. Although [the defendant] presents risk factors for serious illness from COVID-19 … and he would likely be at high risk of contracting the virus in a congregate setting like FCI Terminal Island, the increased risk of serious illness caused by his sentence has now been significantly ameliorated by his transfer to home confinement. The Court acknowledges that because the BOP indicated it retains authority to return him to FCI Terminal Island, his sentence does continue to place [the defendant] at some level of risk of developing serious illness at some point in the future. However, the possibility that [the defendant] will be returned to FCI Terminal Island while the pandemic continues serves as a far weaker basis for finding 'extraordinary and compelling reasons' justifying his release than the circumstances that existed at the time of his initial motion, when he faced an imminent threat of contracting the virus."); *United States v. Sevilla-Acosta*, 2020 WL 6589797, at *1 (D. Minn. Nov. 10, 2020) (denying a motion for compassionate release for mootness following transfer to a residential reentry center); *United States v. Ogden*, 2020 WL 4015730, at *3 (D. Utah July 16, 2020) (denying a motion for compassionate release for mootness following transfer to home confinement); *United States v. Bradley*, 2020 WL 4676377, at *2 (E.D. Mich. Aug. 12, 2020) (denying a motion for compassionate release while observing "[n]ow that Defendant is serving the remainder of his term on home confinement, there is no extraordinary and compelling reason to reduce his sentence.").

**Certificate of Service**

I certify that on February 22, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☐  The CM/ECF system will send notification to the following CM/ECF participant(s):

☒  I also certify that I have mailed this document by United States Postal Service to the following non-CM/ECF participant(s):

MARTIN VANDEMERWE
# 14358-081
FCI – Englewood
9595 W. Quincy Avenue
Littleton, CO  80123

*/s/ Jessie R. Chelsea*
Legal Administrative Specialist